**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**STEPHANIE MARIE SCOTT,**

                  **Plaintiff,**                    3:12-CV-1840 (NAM)

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                  **Defendant.**
_____

**APPEARANCES:**

Charles E. Binder, Esq.
Law Office of Harry J. Binder and Charles E. Binder, P.C.
60 East 42nd Street, Suite 520
New York, New York 10165
For Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Jason P. Peck, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

**INTRODUCTION**

The Commissioner found plaintiff Stephanie Marie Scott disabled as of February 17, 2010, and awarded benefits. Plaintiff brings this action to challenge the Commissioner's disability onset date determination and claims her disability began on July 29, 2009, more than six months earlier. As discussed below, the Court finds that the ALJ's disability onset date determination is not supported by substantial evidence.

**BACKGROUND**

Plaintiff, who was thirty-one when she applied for benefits, has Type I, insulin-dependent, diabetes, a diagnosis she received at age ten. She graduated from high school, attended three years of college and worked continuously in various positions, including cashier, bookkeeper, waitress, nursing assistant, and employment security officer, until July 26, 2009, when, she alleges, she had to stop because her diabetes and blood sugars were "[u]ncontrollable" and she was suffering from depression. T.162. The following is a recitation of the relevant evidence.

**Medical Evidence**

In April 2009, two months prior to the alleged disability onset date, plaintiff was admitted to the intensive care unit in Lourdes Hospital in Binghamton, New York for: diabetic ketoacidosis; diabetes mellitus Type I, uncontrolled; dehydration; urinary tract infection; and electrolyte imbalance. T.498.

On June 19, 2009, plaintiff went to the office of her primary care physician, Dr. Martin Masarech, to obtain treatment for a wound on her right thumb. T.306.

On July 20, 2009, plaintiff went to Dr. Masarech's office complaining that her "sugar has been off" and that she was having pelvic discomfort. T.311. Dr. Masarech diagnosed a urinary tract infection and directed plaintiff not to work for three days. T.311.[1]

On July 26, 2009, the alleged disability onset date, plaintiff "went home from work early" because she "was not feeling well" and her "doctor took her out of work". T. 162. At the time, she had been working full time as a cashier at a home improvement store. She has not worked since then.

---

[1]Dr. Masarech issued another work excuse for July 23-25, 2009. T.312.

2

Plaintiff returned to Dr. Masarech's office on August 3, 2009. T.314. She complained of chills, fatigue, nasal congestion and wheezing. T.314. Dr. Masarech commented that plaintiff was depressed and "crying, stressed - frustrated over sugar." T.315. Dr. Masarech prescribed an antidepressant. T.315. He also assessed bronchitis and prescribed an antibiotic. T.315. Dr. Masarech excused plaintiff from work for one month: August 3, 2009 to September 3, 2009. T.316.

On September 3, 2009, plaintiff went to Dr. Masarech's office. T.318. He characterized plaintiff's diabetes as "uncontrolled" and noted that plaintiff was experiencing increased fatigue. T.318. Plaintiff reported that she felt unable to work or to deal with stress. T.318. Dr. Masarech recommended that she "stay off work until sugars stabilize" and excused her from work from September 3, 2009 to October 3, 2009. T.320.

Plaintiff went to see Dr. Masarech on October 9, 2009. T.322. Dr. Masarech's record indicates that plaintiff's diabetes was "uncontrolled", that she "has been managed with -diet - insulin - fingerstick blood sugars", has been "experiencing - increased fatigue", and has been "[u]nable to get accurate glucose readings (too high for machine to read)". T.322. Under "Assessment/Plan", Dr. Masarech wrote: "DM, uncomplicated, type I, uncontrolled. Moderate, very out of control -needs stable lifestyle - needs to be out of work". T.323.

Plaintiff went to Dr. Masarech's office on October 29, 2009 complaining of pelvic discomfort and reported that she had been in contact with her endocrinologist, but that her blood sugar levels "were over 600 in last 2 days." T. 326. Dr. Masarech prescribed an antibiotic and Diflucan and advised her to stay in close contact with her endocrinologist. T.327.

On November 18, 2009, plaintiff was admitted to the hospital because her blood sugar was

high. T. 473. Plaintiff complained of "having some weakness, tiredness, achiness and she knew that her sugars are getting out of control." T. 473. Doris Hughs, a nurse practitioner at the hospital, assessed "[d]iabetic ketoacidosis with underlying poorly-controlled type I diabetes." T.477. When plaintiff was discharged on November 21, 2009, her diabetic ketoacidosis was "resolved" and her "sugars" were below 200. T.478.

On February 10, 2010, plaintiff reported to Dr. Masarech that she was depressed and anxious, "lots of stress - sugars up - not sleeping". T. 430. On February 24, 2010, plaintiff went to Dr. Masarech's office complaining of a cough and fever. T.434. On May 3, 2010, plaintiff went to Dr. Masarech's office and reported back pain and depression. T.439. On May 17, 2010, plaintiff went to Dr. Masarech's office because she had a wound on her right lower quadrant. T.444. Dr. Masarech diagnosed a lesion on her abdomen "due to injection site -spontaneously draining" but with "no toxic features" and prescribed an antibiotic. T.444.

On June 22, 2010, plaintiff went to the hospital for "excision of abdominal wall subcutaneous lesions." T. 453. After the procedure, plaintiff was admitted for "control of her glucose". T.454.

Plaintiff was admitted to the hospital "for the management of diabetic ketoacidosis" again on: August 13, 2010, October 18, 2010, November 17, 2010, and December 5, 2010. T.551, 548, 540, 537.[2]

**Opinion Evidence**

---

[2]Office progress notes indicate that plaintiff saw Sandra Ciullo, a physician assistant at Lourdes Endocrinology on July 7, 2010 and September 8, 2010, for "follow-up of insulin-dependent diabetes." T.571, 569. Ciullo noted on September 8, 2010, that plaintiff had "[p]oorly controlled insulin-dependent diabetes." T.569.

4

The Commissioner referred plaintiff to Dr. August Valmond for an internal medicine examination on January 11, 2010. T.378. Plaintiff told Dr. Valmond that "her blood glucose runs constantly greater than 240" and "sometimes . . . greater than 300." T. 378. She also reported having "protein in the urine and blood in the urine, which is secondary to her diabetes." T.378. Plaintiff stated that she was able to cook, clean, do laundry and shop but that her mother and husband help her. T.379. After examining her, Dr. Valmond diagnosed, among other things, "[u]controlled diabetes mellitus, type 1", [h]istory of asthma and "[h]istory of depression" and stated that plaintiff "would benefit from better control of her diabetes mellitus" and "should avoid smoke, dust, and other known respiratory irritants secondary to asthma history." T.381.

The Commissioner referred plaintiff to Mary Ann Moore, Psy.D., for a psychiatric evaluation on January 11, 2010. T.384. Dr. Moore opined that plaintiff "may have some slight difficulty dealing with stress, but can generally relate adequately with others, make appropriate work decisions, and maintain a regular work schedule." T.387. Dr. Moore further stated that while "[r]esults of the examination appear to be consistent with psychiatric issues," they were not "significant enough to interfere with the claimant's ability to function on a daily basis." T.387.

In a letter dated February 17, 2010, addressed "To Whom it May Concern", Dr. Masarech stated:

> Stephanie is a brittle diabetic, managed by an endocrinologist. They are trying to regulate her sugars and are putting her back on a pump. She is also very depressed and much of her mood issue is related to her diabetes. She has mild asthma which also adds to her disability. She has had multiple hospitalizations due to ketoacidosis. The stress and disruption of her diet and activity caused by the workplace makes it more likely for her diabetes to decompensate. At this time she is unable to work and I do not foresee this changing in the near future. I would recommend no work for at least a year while the diabetes and mood disorders are treated. After that time a re-evaluation could be done, but her diabetes is going to be a significant limiting factor in her ability to work.

T.625.

In a questionnaire dated June 30, 2010, Dr. Masarech stated that plaintiff had been disabled since "at least" June 2009. T.527. Dr. Masarech estimated plaintiff's level of fatigue to be 8/10. T.523. Dr. Masarech opined that plaintiff could lift up to 20 pounds, occasionally, sit for 7 hours and stand or walk for 0-1 hours in an 8-hour workday, but that she would have to "get up and move around" for 15 minutes every 2 hours. T.523-24. Dr. Masarech stated that plaintiff would have some moderate limitations using her upper extremities during the workday, that her symptoms would "likely increase . . . in a competitive work environment" and that pain or fatigue would interfere frequently with her attention and concentration. T. 525-26. Additionally, Dr. Masarech opined that plaintiff would need to take unscheduled 15-30 minute breaks to rest during each workday and that she would be absent from work more than three times a month as a result of her impairment. T.526-27.

**ALJ's Decision and Appeal**

On March 30, 2011, the ALJ issued a decision granting plaintiff's application for benefits but finding that her disability onset date was February 17, 2010 and that plaintiff therefore was not entitled to benefits for the period of July 26, 2009 through February 16, 2010. The ALJ made two residual functional capacity determinations. In the first determination, the ALJ found that from July 26, 2009 to February 16, 2010, plaintiff had the residual functional capacity to perform "less than the full range of light work" but that even with this limitation, she could perform her past relevant work, and thus was not disabled at that time. In the second determination, the ALJ found that as of February 17, 2010, plaintiff had the residual functional capacity "to perform less than the full range of light or sedentary work" but needed to "take unscheduled breaks throughout

an eight-hour day." T.17-18. The ALJ therefore concluded that, beginning on February 17, 2010, a finding of disabled was appropriate under the framework of the Medical-Vocational Rules, because plaintiff was "unable to do sustained work activities in an ordinary work setting on a regular and continuing basis". T.20.

Following the ALJ's decision, and in support of her request to the Appeals Council for review, plaintiff submitted a letter dated July 8, 2011, from Dr. Masarech, who provided a retrospective opinion:

> I began seeing Stephanie in April of 2009. She was having increasing trouble with her diabetes at that time and we arranged for an endocrine referral for her. By July of 2009, her sugar had reached the point of being a major problem and we took her out of work for a few days. She was seen here multiple times in 2009 and 2010 with escalating sugar and mood problems. It became clear that her work schedule and the demands of full time employment were more than she could handle.
>
> On May 20, 2009, her A1c level was 11.7% which indicates horrible diabetic control. She had been hospitalized in April of 2009 due to her diabetes. Multiple reports from her endocrinologist indicate poor control throughout the remainder of 2009 and throughout 2010.
>
> In my opinion, Ms. Scott's diabetes has not been under control since April of 2009 at least. I believe records from Lourdes Hospital and Lourdes Endocrinology would also support this.

T. 626. The Appeals Council incorporated this letter into the record but denied plaintiff's request for review. This action followed.

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and seeks an order reversing the Commissioner's decision and remanding this matter for a calculation and award of benefits for the period between July 26, 2009 and February 16, 2010. Presently before the Court are the parties' cross-motions for judgment on the pleadings. Dkt. Nos. 8, 11.

**DISCUSSION**

Plaintiff argues that: (1) the ALJ's disability onset date determination is not supported by substantial evidence; (2) the ALJ's decision to accord less than controlling weight to her treating physician's opinion was improper; and (3) the ALJ's evaluation of her credibility was improper. The Commissioner argues in response that the ALJ applied the correct legal standards and that her decision is supported by substantial evidence.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether plaintiff is disabled. Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**Disability Onset Date**

In her application for benefits, plaintiff alleged that her disability onset date was July 26, 2009. The ALJ agreed she was disabled but found that the medical evidence indicated that her disability onset date was February 17, 2010. Plaintiff challenges this finding.

Social Security Ruling 83-20 provides that in determining the onset date of disabilities of

8

nontraumatic origin:

> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began . . . .
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

SSR 83-20. In these cases, SSR 83-20 instructs that: (1) "[t]he starting point . . . is the individual's statement as to when disability began"; (2) "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date"; and (3) "[m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability" and serve "as the primary element in the onset determination." SSR 83-20.

Here, plaintiff stated that her disability began on July 26, 2009. Plaintiff claims that July 26, 2009 is also the date her diabetes caused her to stop working because her blood sugars were "[u]ncontrollable" and she was suffering from depression. T.162. The ALJ did not find plaintiff's "statement as to when her disability began to be of great significance in selecting the proper onset date", however, because she found that "various acute illness," not diabetes, caused plaintiff to stop working. This is not supported by substantial evidence.

Dr. Masarech's records show that during the time period in question plaintiff suffered from "various acute illnesses" as well as high blood sugar and depression, which led to intervals of incapacitation and hospitalization during the same time period. T.311 (June 20, 2009 - urinary tract infection and complained that her "sugar has been off"); T.315 (August 3, 2009 - bronchitis

9

and complained that she was depressed "crying stressed - frustrated over sugar"); T.318 (September 3, 2009 - noting her uncontrolled diabetes and increased fatigue, Dr. Masarech recommended that plaintiff "stay off work until sugars stabilize"); T.323 (October 9, 2009 - "[u]nable to get accurate glucose readings (too high for machine to read)" "DM, uncomplicated, type I, uncontrolled. Moderate, very out of control - needs stable lifestyle - needs to be out of work"); T.326 (October 29, 2009 - pelvic discomfort and complained that her blood sugar levels "were over 600 in last 2 days"); T.473 (November 18, 2009 - admission to Lourdes Hospital for treatment of high blood sugar); T.430 (February 10, 2010, depressed and anxious, "lots of stress - sugars up - not sleeping"). Thus, the ALJ's finding that "various acute illnesses", not diabetes, stopped her from working on July 26, 2009, is not supported by substantial evidence.

Dr. Masarech, plaintiff's treating physician, opined that plaintiff was disabled beginning in June 2009, if not earlier. T.527. The ALJ found this opinion to be inconsistent with the medical evidence, explaining that "while the claimant has [sic] ketoacidosis once between her alleged onset date and February 2010, she has been hospitalized for ketoacidosis on multiple occasions since February 2010." T.18. The ALJ's explanation, however, overlooks plaintiff's admission to the intensive care unit in April 2009 for treatment of diabetic ketoacidosis, dehydration and a urinary tract infection. T.498. While this hospitalization was prior to the alleged onset date, when considered together with the evidence of her November 2009 hospitalization, it supports plaintiff's statement that she was suffering from uncontrolled diabetes as early as April 2009, and well before February 17, 2010, the date the ALJ determined her diabetes became disabling.

After rejecting the date plaintiff alleged, the ALJ selected the date of Dr. Masarech's "To Whom it May Concern" letter, February 17, 2010, as the disability onset date. This selection

10

appears arbitrary. *See Cataneo v. Astrue*, 187 Soc. Sec. Rep. Serv. 640, *15-16 (E.D.N.Y. Mar. 17, 2013) ("An arbitrary onset date determination by the Commissioner will not be accepted by a reviewing court . . . 'such as the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing.'" (quoting *McCall v. Astrue*, No. 05–CV–2042, 2008 WL 5378121 (S.D.N.Y. Dec. 23, 2008)). In the February 17, 2010 letter, Dr. Masarech discussed plaintiff's status as disabled but did not offer an opinion regarding onset date. T.625. The ALJ nevertheless found the date of the letter determinative because "[t]his is when her treating general practitioner made a statement about her not working for more than a brief work excuse" and identified plaintiff's diabetes as "a significant limiting factor." T.18.

As discussed, the medical evidence suggests that plaintiff's uncontrolled diabetes were severely limiting as early as April 2009. Further, Dr. Masarech specifically stated in the questionnaire he completed on June 30, 2010, that in his opinion, plaintiff's diabetes first prevented her from working in June 2009, if not earlier. T.537. The ALJ declined to accord controlling weight to Dr. Masarech's opinion, however, explaining that "there is nothing in the medical evidence that suggests her limitations were this severe as of her alleged onset date." T.18. Accordingly, the Court must consider whether the ALJ properly applied the treating physician rule.

**Treating Physician Rule**

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. §

11

404.1527(c)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir.1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). An ALJ may refuse to consider the treating physician's opinion only if she is able to set forth good reason for doing so. *Saxon v. Astrue*, 781 F.Supp.2d 92, 102 (N.D.N.Y. 2011). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643–44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence." *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, she must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134. "Failure to provide 'good reasons'

for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (citation omitted).

Here, the ALJ gave "partial weight" to Dr. Masarech's opinion that plaintiff's limitations began in June 2009 on the ground that the medical evidence showed that her limitations "were related to various acute illnesses that do not meet the durational requirements . . . and therefore cannot be the basis of . . . earlier onset." T. 18. As discussed, the medical evidence, however, shows that during each episode of acute illness, whether infection or depression, plaintiff also suffered from uncontrolled diabetes.

Further, Dr. Masarech's opinions were based on an ongoing treatment relationship, a factor the ALJ does not appear to have considered. Indeed, Dr. Masarech saw plaintiff as often as once a month between July 2009 and February 2010. T.311, 314, 318, 322, 326, 430. Laboratory studies and plaintiff's history of hospitalizations due to diabetic ketoacidosis further support Dr. Masarech's opinions. T. 503, 473. Moreover, Dr. Masarech's statement that plaintiff's diabetes had been uncontrolled since at least June 2009, is consistent with Dr. Valmond's January 11, 2010 diagnosis of uncontrolled diabetes. T.381. Thus, the ALJ's decision to accord less than controlling weight to Dr. Masarech's opinion is not supported by substantial evidence.

**New Evidence - Appeals Council**

Under 20 C.F.R. §§ 404.970(b) and 416.1470(b) a plaintiff is expressly authorized to submit new evidence to the Appeals Council without demonstrating good cause. Under the regulations, the Appeals Council must consider new and material evidence if it relates to the period on or before the date of the administrative law judge hearing decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); 20 C.F.R. §§ 404.970(b). When it fails to do so, the proper course for

13

the reviewing court is to remand the case for reconsideration in light of the new evidence. *See Milano v. Apfel*, 98 F. Supp.2d 209, 216 (D.Conn. 2000). Importantly, the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and opinions of a treating physician. *See Snell*, 177 F.3d at 134. Accordingly, the Appeals Council must give good reasons for the weight it assigns to a claimant's treating physician's opinion. *Id*.

In this case, plaintiff submitted a letter to the Appeals Council from Dr. Masarech in which he states that "[b]y July of 2009, her sugar had reached the point of being a major problem", that he saw plaintiff "multiple times in 2009 and 2010 with escalating sugar and mood problems" and that it "became clear that her work schedule and the demands of full time employment were more than she could handle." T.626. The Appeals Council made this letter part of the record but denied plaintiff's request for review. T.1, 5.

Plaintiff argues that this case should be remanded for further consideration of Dr. Masarech's retrospective opinion regarding onset date. Dr. Masarech's letter, however, was a restatement of his earlier opinion that plaintiff's disability onset date was prior to July 2009. Thus, it is not "new" evidence.

**Credibility**

The ALJ found that:

the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to February 17, 2010.

. . .

The claimant's reported daily activities do not support her allegations. She told the consultative examiner in January 2010 that she was able to cook, clean, do laundry, shop, care for her children and care for her own personal needs. The claimant's

14

November 2009 wrist injury resulted from a fall while she was roller-skating, which
suggests that her mental and physical symptoms were not as severe as she alleges.

T.16. The ALJ found, however, that "beginning on February 17, 2010, the claimant's allegations regarding her symptoms and limitations are generally credible." T.18.

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]" *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, No. 06 Civ. 0155, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. Sept. 21, 2007) (citing 20 C.F.R. § 404.1529(c)(2)).

If a claimant's testimony concerning the intensity, persistence or functional limitations associated with his pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the claimant's statements about the intensity, persistence, or functionally limiting effects of her pain are consistent with the objective medical and other evidence. *See* SSR 96-7p; *Cloutier v. Apfel*, 70 F. Supp.2d 271, 278 (W.D.N.Y. 1999) (holding that although the ALJ's decision contained a discussion of the medical evidence

15

and a summary of the plaintiff's subjective complaints, the decision did not provide a sufficient analysis of the evidence to support the lack of credibility finding).

When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief [.]" *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Id*.

As discussed, the medical evidence does not support the ALJ's finding that plaintiff's diabetes was not disabling on July 26, 2009, but increased in severity to the point of causing disabling limitations beginning on February 17, 2010. There is, therefore, no basis for the ALJ's finding that plaintiff's allegations of disabling limitations were not credible until February 10, 2010.[3]

**REMEDY**

Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

---

[3]The ALJ deemed plaintiff's roller skating accident in November 2009 as evidence "that her mental and physical symptoms were not as severe as she alleges." T.16. In this case, a single attempt to roller skate does not call plaintiff's credibility into question because her exertional abilities were not at issue.

16

cause for a rehearing." The Second Circuit has stated that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (citing *Rosa*, 168 F.3d at 82-83). "On the other hand, 'where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, we have opted simply to remand for a calculation of benefits.'" *Id.* at 385-86 (quoting *Rosa*, 168 F.3d at 83).

In this case, there are no gaps in the administrative record and no basis to conclude that a more complete record might support the Commissioner's decision. Although the letter plaintiff submitted to the Appeals Council contains a retrospective opinion from her treating physician regarding disability onset date, further consideration would not alter the outcome because it is consistent with his prior opinions.

It is undisputed that plaintiff is disabled within the meaning of the Social Security Act. Only the ALJ's finding that plaintiff's disability began on February 17, 2010, not July 26, 2009, is at issue. The substantial evidence in the record shows that plaintiff's uncontrolled diabetes and its related symptomology, which contributed to her depression and required frequent trips to the doctor and occasional hospitalization, were present on July 26, 2009, and rendered her unable to do sustained work activities on a regular and continuing basis. The Court therefore concludes that remand for a calculation of benefits utilizing July 26, 2009 as the disability onset date is appropriate in this case.

**CONCLUSION**

For these reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11)

is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that the this matter is **REMANDED** for a calculation of benefits utilizing July 26, 2009 as the disability onset date; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment for plaintiff and **Close this Case**.

**IT IS SO ORDERED.**

Date:   September 17, 2014

Norman A. Mordue
Senior U.S. District Judge